UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RITA FISHER,<br> Plaintiff, | § § § | |
| v. | § | Civil Action No. 3:16-CV-2679-D-BK |
| NANCY BERRYHILL,<br>Acting Commissioner of Social Security,<br> Defendant. | § § § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Standing Order of Reference*, Doc. 20, this cause is before the Court on the parties' cross motions for summary judgment. Doc. 16; Doc. 17. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

  **A. Procedural History**

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff filed for benefits in October 2009, claiming that she became disabled in January 2007. Doc. 14-10 at 2-4. Her date last insured ("DLI") was December 31, 2011. Doc. 14-3 at 37. Her case was twice remanded by the Appeals Council after unfavorable determinations by an ALJ. The opinion remanding the case a second time ordered the ALJ to "evaluate the nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 . . . and nonexamining source opinion in accordance with the provisions of 20 CFR [404.1527]." Doc. 14-6 at 49. A different ALJ was

assigned to the case for the third hearing, after which, Plaintiff's application again was denied. Doc. 14-3 at 32-43. She now appeals to this Court pursuant to 42 U.S.C. § 405(g).

**B. Factual Background**

Plaintiff was 60 years old when she filed her application for DIB. Doc. 14-10 at 2. She had a high school education and had worked as a legal secretary for 20 years. Doc. 14-5 at 10; Doc. 14-13 at 45.

As relevant here, Plaintiff was diagnosed with widespread osteoarthritis, fibromyalgia, degenerative joint disease of the knees, psoriatic arthritis, and possible rheumatoid arthritis. Doc. 14-3 at 37; Doc. 14-13 at 42; Doc. 14-13 at 75. In September 2009, Dr. William Boone, D.O, examined Plaintiff, who reported that she was feeling well and had a good energy level. Doc. 14-12 at 10. She did not report fatigue, a headache, neck pain or stiffness, or swelling of her extremities. Doc. 14-12 at 10. In February 2010, Plaintiff saw Dr. Boone and complained of arthritis, pain in her feet and knees, and stiffness, but her joints were not swollen and she did not have any muscle weakness. Doc. 14-12 at 8. In November 2010, Plaintiff reported to Dr. Boone's nurse that her energy level was good and she was feeling well, and she had full range of motion in her head and neck. Doc. 14-12 at 61. Her lower extremities were negative for edema both at that time and in February 2011. Doc. 14-12 at 61, 64.

In March 2010, Plaintiff underwent a consultative medical examination with Dr. David Ukoha, M.D. Doc. 14-12 at 13. Dr. Ukoha reported that although Plaintiff could not squat due to knee pain, she could tandem walk, toe walk, and heel walk with only mild difficulty. Doc. 14-3 at 15. Dr. Ukoha also noted that Plaintiff's gait, range of motion, grip strength, and fine motor ability were normal although she had joint pain, stiffness, and swelling. Doc. 14-12 at 14-15.

Dr. Boone referred Plaintiff to Dr. Marian Sackler, M.D., with Arthritis Centers of Texas, who saw her from June 2010 until after Plaintiff's DLI. Doc. 14-12 at 28; Doc. 14-14 at 51. During her treatment with Dr. Sackler, Plaintiff regularly complained of stiffness, pain in her knees and low back that worsened with standing up and sitting, swollen hands and feet, and fatigue. Doc. 14-13 at 40-41, 44, 47. In August 2011, Dr. Sackler wrote a letter "to whom it may concern," stating that due to Plaintiff's multiple medical conditions, she was unable to work full time "without experiencing a significant flare in her conditions, resulting in intolerable pain." Doc. 14-13 at 75. In two opinions issued after Plaintiff's DLI, Dr. Sackler stated that Plaintiff could not have sustained full time work during the relevant treatment time frame and would likely be absent from work more than four times a month as a result of her medical condition. Doc. 14-14 at 45-46; Doc. 14-14 at 49-51.

**C. The ALJ's Findings**

In April 2015, the ALJ denied Plaintiff's application for benefits. Doc. 14-3 at 35-43. The ALJ discussed Dr. Sackler's opinion, Doc. 14-3 at 38-39, but ultimately gave it little weight. Doc. 14-3 at 40. The ALJ noted that Dr. Sackler's August 2011 opinion that Plaintiff could not work was contradicted by the doctor's own records, which indicated that Plaintiff was doing well on her medications, the laboratory report for the rheumatoid factor was negative, and Plaintiff reported feeling good and having a lot of good days. Doc. 14-3 at 40. The ALJ also gave little weight to Dr. Sackler's two post-DLI opinions about Plaintiff's alleged inability to work, finding that they were inconsistent with the other evidence of record and the evidence prior to the DLI. Doc. 14-3 at 40. The ALJ instead gave more weight to the opinions of Dr. Ukoha and Dr. Boone. Doc. 14-3 at 40-41.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") for sedentary work, except that she could (1) lift/carry 10 pounds occasionally and frequently; (2) sit for six hours in an eight-hour workday; (3) stand/walk for two hours in an eight-hour workday; (4) occasionally climb ramps and stairs; and (5) frequently balance, stoop, kneel, crouch, and crawl. Doc. 14-3 at 39. As such, the ALJ determined that Plaintiff could perform her past work as a legal secretary. Doc. 14-3 at 42.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or

4

is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Moreover, the Court is under no obligation to probe the record for evidence that supports one side or the other; thus, it has relied upon the parties' assessment of, and citation to, the evidence of record in support of their arguments. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ failed to properly weigh Dr. Sackler's opinion in accordance with 20 C.F.R. § 404.1527, despite the Appeals Council's instructions, which resulted in an erroneous RFC finding. Doc. 16-1 at 1; Doc. 16-1 at 8-9. Further, Plaintiff contends that the ALJ should have considered Dr. Sackler's post-DLI opinions and re-contacted the doctor for additional information regarding her opinion that Plaintiff could not work. Doc. 16-1 at 9-10.

Defendant responds that the ALJ was not required to apply the section 404.1527(c) factors in this case because Dr. Ukoha and Dr. Boone, as well as Dr. Sackler's own progress notes, provided first hand competing medical evidence that supports the ALJ's determination. Doc. 17-1 at 6-8. Additionally, Defendant asserts that the ALJ did not err in giving little weight to Dr. Sackler's post-DLI opinions because they were inconsistent with the evidence as a whole. Doc. 17 at 8. Finally, Defendant maintains that the ALJ was not required to re-contact Dr. Sackler for additional information because her records were not inconclusive or otherwise inadequate. Doc. 17-1 at 8-9.

A treating physician's opinion about the nature and severity of a claimant's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (alteration in original). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citation and internal quotation marks omitted). However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," or to give little or no weight to a treating physician's opinion if the ALJ provides "good cause" for doing so. *Id.* at 455-56. Good cause exists when a treating

6

source's opinion is conclusory, unsupported by medically acceptable evidence, or lacks substantial support. *Id*. at 456 (internal citations omitted).

However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [section 404.1527]." *Id.* at 453 (emphasis in original). Under that rubric, the ALJ must consider the following six factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id*. at 455-56. The "*Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 Fed. Appx. 461, 467 (5th Cir. 2009) (per curiam) (noting that the treating physician's opinion was inconsistent with his own clinical notes, the results of diagnostic testing, and the opinions of other examining physicians). Thus, where the ALJ is confronted with competing opinions of examining physicians, he "need not necessarily set forth his analysis of the Section 404.1527 factors when declining to give controlling weight to a treating physician." *Garza v. Colvin*, No. 3:15-CV-1959-BN, 2016 WL 3181999, at *4 (N.D. Tex. June 8, 2016) (Horan, J.) (citing *Qualls*, 339 Fed. Appx. at 466-67).

As an initial matter, the Court observes that Plaintiff clearly mischaracterizes the Appeals Council's second remand order in this case. In her brief, Plaintiff states that the ALJ "interpreted the order of the Appeals Council" to direct the ALJ to "give further consideration to the treating source opinion of Dr. Sackler [dated August 2011] pursuant to 20 C.F.R. § 404.1527 and explain

7

the weight given to such opinion evidence." Doc. 16-1 at 3. While the ALJ did indeed "characterize" the remand order that way, that is not, in fact, what the remand order directed the ALJ to do. *See* Doc. 14-6 at 49 (Appeals Council order directing the ALJ to "evaluate the nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 . . . and nonexamining source opinion in accordance with the provisions of 20 CFR [404.1527].").

Plaintiff's entire argument hinges on this mischaracterization of the Appeals Council's edict. Indeed, she reiterates it in the strongest of terms in her reply brief:

> [T]he ALJ was specifically required by the Appeals Council to evaluate Dr. Sackler's opinions in accordance with the factors set forth in 20 C.F.R. §404.1527. *It was not a matter of choice*. Further, under the direction of the Appeals Council *the opinions of other doctors are not relevant*. *The ALJ was directed to focus on the opinions of Dr. Sackler* pursuant to the provisions of 20 C.F.R. §404.1527.

Doc. 19 at 2 (emphasis added). However, that the ALJ may have misunderstood or mischaracterized the Appeals Council's instruction does not change the responsibility of the ALJ under the Appeal Council's second remand order.

That notwithstanding, it is clear upon review that the ALJ did not reject the sole relevant medical opinion before her in violation of *Newton*. Rather, the ALJ also had for consideration the opinions of Drs. Ukoha and Boone, both of whom had personally examined Plaintiff. Their opinions, as described in detail above, constituted competing first-hand medical evidence that provided substantial evidence to support the ALJ's decision to deny Plaintiff benefits. *See Greenspan*, 38 F.3d at 236 (holding that the reviewing court cannot reweigh the evidence, retry the issues, or substitute its own judgment, but determines only whether substantial evidence is present to uphold the ALJ's decision).

Moreover, Dr. Sackler's pre- and post-DLI opinions that Plaintiff is unable to work are not entitled to deference because that issue is a legal conclusion "reserved to the Commissioner."

*Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam). Thus, the ALJ did not err in failing to credit those opinions. For the same reason, the ALJ did not reversibly err in failing to re-contact Dr. Sackler to further clarify her opinions on that point. *Cf. Newton*, 209 F.3d at 458 (holding that the claimant must show that she was prejudiced by the ALJ's failure to re-contact her treating physician for additional information by demonstrating that the additional evidence might have led to a different decision).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 16, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 17, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on August 24, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE